214-100 Terry v. Seymour v. Gregg Collins, Washington Country Club, ATS Medical, Sean v. William T. Cacciatore. On behalf of ATS Medical, Ms. Jennifer A. Moriarty. Good morning, Counsel. Good morning, Your Honor. Mr. Cacciatore. Thank you. I'm the police of court, Bill Cacciatore from Rockford, Illinois. And my co-counsel with me today is Eileen J. McGeever. And we are here today because we believe that the Circuit Court of Winnebago County wrongfully dismissed the complaint filed by Terry Seymour and his wife, Monica Seymour, in the Circuit Court of Winnebago County for serious personal injuries that occurred to Terry Seymour on June 3, 2010 when he was being taken to Rockford Memorial Hospital. It was a passenger in an ambulance, and at that time, the ambulance and another vehicle were driven by the defendant, an employee of Rockford Country Club, were in a very serious collision at the intersection of Riverside and North Main Street. Now, this all happened after they had filed a bankruptcy petition, correct? Yes, that bankruptcy petition, Your Honor, was filed on 4-24-08. And this was also after the Bankruptcy Court had confirmed the petition? The plan had been already... Even if they're unavailable to the bankruptcy state, and doesn't that include future interests? And so, therefore, wouldn't that include this lawsuit, this claim? Not in Chapter 13, Your Honor. I have attached an affidavit from the trustee of Chapter 13 of the United States District Court, which is attached to our motion objecting to the dismissal. And at this point, this plan had already been confirmed, and he had proceeded with the plan. And at that time, he was specifically instructed by the trustee of the United States District Court, Chapter 13, that unless he received more than $2,000 cash or some other asset by device or death or something like that, like insurance proceeds, he did not have to report that. Well, this case involves a couple of different layers. I mean, I understand what you're saying. And ultimately, the trial court found a stopper, which is a whole separate consideration that's going to be what this case turns on, in my humble opinion. But the fact is, I understand it was after the plan was confirmed, it was after some representations were made by the bankruptcy trustee. You are not saying, however, that a debtor has no general obligation to inform the bankruptcy court about money that may be coming into? You're not saying that, are you? I'm not saying that. I'm not saying cash. And I'd like to jump right now into the difference between schedules in the Chapter 7 bankruptcy and the Chapter 13, because there are differences, substantial differences in both of those plans under the Bankruptcy Act. And as we have indicated, in the Chapter 7 cases, you have schedules, and you have to disclose all your assets. And what are you looking for there? You're looking for a discharge, no-asset discharge from the bankruptcy court in Chapter 7. In other words, eliminating all of your debts. In the Chapter 13, it's a little different. In the Chapter 13, you meet with your creditors, there's a plan, you try to determine an amount that you can afford to pay on these debts to a certain point. And as we've indicated in our briefs, that it can be no longer than five years. You know from the date of the accident and when he filed his Chapter 13, there was a two-year disparity there. The Chapter 13 had already been filed for two years. Well, do you have a case that says in the Chapter 13 that after the bankruptcy court confirms the plan that you don't have to update the court at all? Well, I don't want to make a general statement that you've got cash. If you've got over $2,000, as I indicated, the trustee in bankruptcy instructs all Chapter 13 debtors to, you have to disclose that and bring it into the court. Well, do you have a case that says where there's a cause of action pending, you don't have to disclose that either? Do you have a specific case that holds that? I don't think I would have, not under Chapter 13, do I? There's a... Okay, well this case doesn't have to turn on that. Let's assume for the sake of the argument that you have an ongoing obligation in this case, and I'm not convinced that you didn't. However, estoppel is a whole different thing. There's certain technical elements that have to be met here. So the one that I think this thing turns on is where is the inconsistent position that the defense is pointing to? You're saying, hey, look, we didn't have an obligation, but even if we did, we didn't really take a position under oath. We just didn't do anything. So you understand these arguments that you are stopped now. They're going to be the beneficiary of this estoppel to the bankruptcy court, you know, saves them some money. So can you tell us why you didn't, you're not a stop, why there was no inconsistent position here? Well, as we, now we attached the affidavits of the bankruptcy lawyer. We attached the affidavit of the trustee for the Northern District of Illinois, Chapter 13, and those affidavits stated that he had no duty because he did not, number one, receive any cash during that period of that Chapter 13 that exceeded $2,000. As a matter of fact, he didn't receive really much of anything. He had a workman's compensation case and he was getting some money from that. So you're saying the disclosure obligation is limited only to cash in the Chapter 13? Yes. And there was another divisor decree through insurance, something like that. But you don't have a case law that says that, though. Can we cite case law, Tori, that says that? I don't believe that we have that. We have the affidavit, but I can't, I haven't seen any case law to that effect. Mr. Tori, how would you distinguish the Fourth District case, the Shupe case? The recent case? Yeah. How's that different than the facts here? Well, that's an interesting case. The case just came down, I think, in June of this year. And I looked at that case and I don't think that case discussed anything about Chapter 13s and Chapter 7s, except they found... But it was a 13 case. Yes, it was. Yes, it was. I think Fifth District was it, I think. I don't remember. Fourth District. I, in the Shupe case, just came down to take a look at that and I don't think it addressed, discussed, for that matter, Chapter 13s and Chapter 7s. And that's PowerPoint, in this case. Then in Chapter 7 cases, you have schedules. And most of the cases that arise under Chapter 13 are those cases that have been converted from a Chapter 13 to a Chapter 7. Well, there are a lot of cases that were converted from a 13 to a 7, which would be a no-action case, which is a very different number than we have here. The Shupe case and then your case, they're clearly just pure 13s and there has been no conversion. It was, Your Honor. I agree. It was a pure 13. So, the plaintiffs in that case took the position that since the debtor would have no liability because the plan terminated just as your plan had terminated. Yes. He was discharged on July 17, 2012. You had filed your action by 2011. So, the position in Shupe was the same as yours, one of the same positions as you take. The case was already terminated. The discharge was already had, so there's no benefit at this point. The appellate court disagreed and found, in fact, that there was judicial stop. Why should we not follow this case? Why is this case any different or distinguishable? First of all, it's a Fourth District case. And I do not believe that the Supreme Court has had any pronouncement on Chapter 13 or Chapter 7 issued in this case. We've had some other districts, but I believe that the Second District has not had any pronouncements on this issue. I may be mistaken, but that was my belief looking at the case law. But I think that the Shupe case, and you just mentioned, really is, in fact, I don't think it was reasoned. I don't see a lot in the discussion about these issues, but let me just get to the difference. That in Chapter 13, you have a plan. You pay whatever you can afford to pay. That's been determined by the creditors and the debtor. And then once that's paid, it's not a discharge of assets. No assets discharged because the debtor in Chapter 13 continues to pay the rest of the debtors. But isn't the amount five years? There's a five-year maximum for the plan. That's absolutely correct. But the amount that's paid can be changed depending on the circumstances that are disclosed. Isn't that correct? So that if there's a potential for recovery in a lawsuit, I mean, that might be one factor. And something else is what happened here, which was there was another injury in 2009. Isn't that correct? And a possible workman's comp recovery. And they came in and asked for a modification of the payments based on that. Isn't that correct? Because of the lack of income. That's correct. Right. So that was lack of income. I'm sorry. Go ahead. No, I'm sorry. You can answer. Okay. I apologize. I want to emphasize again that the trustee in this case has addressed that issue. And they don't want unliquidated tort claims filed in this case. It would have been over two years and so on since that accident of June 10th filed because they have to conclude the chapter 13 within five years from the date it was filed. So if you take a look at the trustee, I think she's indicated in her affidavit that that was not something they want to do because they'll never complete it. They don't believe. Now, let me address this. If for one moment I could have settled this case for the plaintiff here, we would have had it then. Of course, that would have exceeded the $2,000 we would have had to go right in. His bankruptcy lawyer would have went in and said, hey, we've got this much money and we can pay off everything. And yes, we would have had to. But if you don't have that much money, they want to move these cases. They have lots of these cases. And they don't want to be tied down with numerous, as I understand it, numerous chapter 13 unliquidated tort claims as something that they have to deal with. Mr. Cacciatore, how would the Holland case help you or hurt you? The Holland case. The 5th District case? The 5th District case. Are you aware of it? I have. Holland versus Schwann, was it? Yes. Schwann's home. Let me ask you this question. I'm sorry. Did your client benefit at all from failing to list this potential claim down the road in that bankruptcy chapter 13 proceeding? Absolutely not. Did not receive any benefit whatsoever. And as we know, that's one of the elements of the judicial establishment. And I don't think he never had a benefit and still doesn't. And the underlying case is still pending in the circuit court. Of course, I want to be able to count it as we're here. And so he did not receive any benefit. That is correct. Did he receive a benefit in that his payments weren't changed? No, he ended up paying off that plan. Pardon? He did comply with the plan and paid his indebtedness. So, I mean, there was no harm to any creditor in this case. So are you saying that if he had disclosed this, that there is no way the creditors could have come in and made any adjustments or asked for any modification in the payments? Is that what you're telling me? Well, he wasn't getting any money. This is a personal injury case, so there's no money unless he wins and is successful in this case. So what, if anything, could the creditors have done? Nothing. If they had known about it? Nothing. Absolutely nothing? Nothing. They couldn't have done a thing in the bankruptcy court? In Chapter 13, the plan. That's correct. We're talking about a Chapter 13. So they could have done nothing in a Chapter 13? No, I don't think so. But in Chapter 7, it's very routine that they come into the plan. But we don't have a Chapter 7. Well, that's why. That was the same issue. You have to admit that this case, Shoup was a Chapter 13. Yes, it was. And it's the first case that I've seen almost anywhere where a Chapter 13. So Shoup obviously is not consistent with your position, is it? It is not. And I would have to disagree with that. And I think there is plenty of law that indicates that, and from the trustee as well, the United States Bankruptcy Court, that he did not have to report that. Well, to answer Justice Zinoff's question, I think the answer would be as said in Shoup, the plaintiff's failure to disclose left him with the ability to permanently avoid his debts after receiving a judgment against the defendants. So there is a benefit, Shoup found. Well, Shoup found. But as you know, he was instructed by his attorney in this case, bankruptcy attorney, that he didn't have to. He was also instructed by the U.S. bankruptcy trustee. He did not have to disclose. So we are in a situation here where he did not get a benefit whatsoever. He just went ahead and paid his Chapter 13 plan, and then he continued to pay off the plan so he had nowhere to get it. So is Shoup distinguishable because we're citing the representations made by the trustee here? There were no such representations made in Shoup, apparently? Apparently not. And I would have to say that Shoup is in error and is wrong. And I think that the Supreme Court of Illinois had to decide this case. Today, before you, it was the Second Districts to make its decision on Chapter 13, this appeal. But I do not think that Shoup is controlling. It's a Fourth District case. It's not the Supreme Court. This court does not have to follow it, and I urge this court not to for the reasons contained in our brief. I think I've explained the Chapter 13. The 7 is these cases happen so often and through the cases, as the court knows, somewhere when they have a Chapter 7, they have to have new schedules from a 13 to a 7, and then they have to list all assets, including the personal injury cases, too, that are on liquid. Well, we've gone around a lot about what 13 involves, what it does involve. But before you close, can you tell us succinctly why judicial estoppel, as found by the trial court, does not apply here? Yes, I think I can do that. I think that the court followed the – referred to Lungi, which we know about, which had the – let me see. Well, you know the elements of judicial estoppel. They're laid out in the case law. Which elements were not met in this case specifically? Did your client take a contrary position in the lawsuit here versus the bankruptcy case? No, no different position. Number one, usually it has to be inconsistent statement, as we know. There's no inconsistent statement here. There has to be some benefit, I think, to the debtor. Well, the benefit's more of a slender read, in my opinion. I think the inconsistent – there's no inconsistent position taken under oath in this case, right? There is not. Well, but that's been more broadly construed since – Yeah, they relaxed that a little bit. Right. So that's relaxed. I mean, one could assume that the schedules that were tendered and not amended in the bankruptcy court were intended for the bankruptcy trustee to understand as true, correct? And so that would be the inconsistency, broadly. There was no inconsistency if you believe what the trustee in bankruptcy told him to do because he didn't have to disclose the personal injury case. I think that's where we go back to. In answer to – he did not take two different positions. He always – that's one of the elements. He always had the same position from the very beginning in this Chapter 13. They weren't – Well, let me ask you one other question. I'm sorry. I know you were trying to sum up for Justice Hudson. But why then was the 2009 injury and workman's income disclosed? Why was that disclosed? I think there was a change, and I think he could not afford to – he wasn't getting as much in temporary total disability for one reason or the other. What legal obligation was there to disclose that? Well, I think when he got less money, he went in for a reduction, as I recall it, and he said he couldn't pay that much. He had to pay a lesser amount because he was getting less money now in temporary total disability for his workman case. Okay. And are you saying the law is only if he had in hand more than $2,000 cash, that's the only circumstance in which he would have had to go in and tell the bankruptcy court about that? That's correct. But you don't have a case because I'm looking at some cases that seem to indicate that a Chapter 13 estate encompasses all property, including legal claims, acquired after the petition is filed but before the case is closed. That's a daily case. Are you familiar with the case? I would just ask this court to consider that this man and this woman, just working people, were told by the lawyer, his bankruptcy lawyer, was told by the trustee for the United States Bankruptcy Court. He did not have to do these things. And in answer to your question, Justice Hudson, the elements take two positions that must be inconsistent. There was no inconsistency. Another one was that he must have succeeded in asserting his first position and received some benefit from it. We talked about that. He did not. The party must have intended to accept the truth of the facts alleged in support of the position. There was no position that he took. The positions must have been taken in a separate judicial or quasi-judicial administration. There was no inconsistent position. And lastly, he was following the trustee of the United States Bankruptcy Courts and it's confirmed by his bankruptcy lawyer he did not have to report this unliquidated claim. So based upon that, I would ask this court to reverse, because it is not judicial stop on it. Thank you. Thank you. We'll have time on rebuttal. Excuse me. Are you all right? I'm just shorter than I thought I was. Good morning. Good morning. May it please the court, my name is Lori McGurk. I represent the defendant at Pele Rockford Country Club. I'm speaking on behalf of all defendants today. If the court has questions on the issue of waiver, my esteemed colleague, Mr. Zupke, would like to address the waiver issue if this court would like to hear argument on that. And if it would, I would concede five minutes of my time to the waiver issue. Thank you. Hard to know where to begin here because I thought we were here. Tell me where to begin. Tell us where is the benefit to the plaintiffs in this case when they had a case that hadn't yet come to fruition. The case hadn't yet been settled. There was no benefit to them, if you will, at this point monetarily. How did they benefit by not advising the bankruptcy court? Interesting point. Here's the problem with the question. It presupposes an assumption. The assumption was made that because it wasn't cash, it didn't have to be disclosed. That's plaintiff's assumption. The problem with that assumption is that there is case law out there that says that Section 541 of the bankruptcy statute is to be interpreted very broadly as Section A7 very specifically states, assets include unliquidated or as yet unrealized assets, and that includes a cause of action. Okay, so they didn't list it. They didn't list it. We know that. I don't care if it's cash or what it is. They didn't list it. The bankruptcy case, it's Chapter 13, so they pay. They pay all of their debts under the 13, and then the case moves on, and now we have a lawsuit. Now, I know we had a lawsuit filed before the case was discharged, but now we have a lawsuit. How would the creditors have benefited with a pending lawsuit in the Chapter 13 case? The creditors benefit because the point of bankruptcy has a debtor has a duty. The duty is to disclose everything, no matter what it is, and the debtor then says, I want this asset to be exempt, and then the creditors have time to look at that asset and say, I don't know if that falls within the exemption. I would like to object to that exemption. What was the asset? The asset was the unliquidated, the pending cause of action. So it had been filed. It wasn't just out in the air. The cause of action was pending for about 22 to 25 months, somewhere in there, during the pendency of the bankruptcy, before it was finally discharged. Well, wouldn't that be the bankruptcy trustee's position to pursue, on behalf of the creditors, any pending or any possible monies out there? Wouldn't that be the trustee's position? Wouldn't they have standing to do that? The trustee does, the creditors do, and it's the court, the bankruptcy court, that ultimately decides whether an asset is available as part of the bankruptcy estate or not. Doesn't the bankruptcy court take the lead from the trustee? I'm sure they do, but I don't think they follow everything carte blanche and say whatever the trustee says is fine, especially if a creditor is going to object. If I might give you an example. Here's the example that I could come up with during this. I buy a lotto ticket. I file for bankruptcy. I have purchased a lotto ticket, and I know it's a winner. But I've got time to reveal myself as a winner. I'm going to put it in a safe somewhere, and I'm not going to tell anybody I've got that lottery ticket. I don't want the creditors to know. I don't want anybody to know. And after my bankruptcy is discharged, voila, I pull out my lottery ticket, and I say I'm a winner. I am now a millionaire. The problem with that is it encourages people to start hiding assets. Oh, nobody would want to know about this. I think a creditor would want to know about that asset. And I think a creditor would want to know about an undisclosed cause of action because there's an assumption being made here, again, that this cause of action was unavailable to the bankruptcy creditors.  How would that cause of action have been available to them if they said to them, hey, I have a pending lawsuit. I filed it April 24th, or I filed it May 20th, 2011. They told them they have a pending lawsuit. Then they get discharged July 17th, 2012. How would the outcome have been any different for the debtors in that case? That case never came to fruition for the creditors. The case didn't come to fruition unlike your lottery ticket. And if I could just add, what if it didn't come to fruition after the five years? What if it took more than five years? But it's still, that's not the issue. The issue, and again, we're doing hypotheticals. The real issue is that the statute. Debtor, you're getting a benefit here. We're going to help you. If you do a Chapter 7, we're going to give you a no-asset discharge. If you do a Chapter 13, we're going to look at your income and we're going to apportion your payments. And you've got to make payments, perhaps only cents on the dollar to each creditor. And we're going to make those payments only last five years. So even if there's a balance due after five years, if you make the payments that we've told you you've got to make, you're getting a benefit. You're getting a discharge. Let's assume that you're correct and we ultimately decide there was some benefit, arguably, accruing to the debtor. That doesn't end this case, does it? We have this whole big other area called judicial estafa. So my concern is how does this fit in with the element of an inconsistent position, which clearly wasn't under oath, but as Justice Steenhoff has pointed out, case law has tended to relax that. So let's assume you get over the under oath hurdle, okay, and it didn't have to be under oath. I'm interested in what exactly is the inconsistent position or representation that was taken by doing nothing. Easy question to answer, actually. There were two workers' comp injuries, according to the facts of this matter. Both of those injuries happened after the bankruptcy was filed. Right, and after the plan was confirmed. That's correct. The first one was disclosed because the plaintiff was advised, hey, you're not making any money. You were working and now you're not. Now you're only relying on your TTD benefits, which are less than your wages were at the time of filing the initial schedules. So let's go in and swear before the court that you no longer have an income, that you're no longer working, and you're only relying on the benefits from the workers' comp claim from that first injury. Three months later, you've got a second workers' comp injury. Wait a minute. Hold the horses. You just swore under oath you weren't working. How in the world could you have a second workers' comp claim stating to the workers' comp commission, oh, I was working and here are my wages? Those are the two totally inconsistent positions. He was working and he never, never, never, there's nothing in the record to show that he disclosed after the first workers' comp injury that he would return back to work, and then that resulted in a second workers' comp injury and a second claim. Let's back up a second. When he filed this, you say he filed a subsequent petition because he wanted some relief on his payments? Is that what you're saying? When you went back into court this time you were alluding to, what was the purpose of it, returning? Okay. So he was injured. He filed his petition for bankruptcy in April of 2008. Sometime in May of 2009, about a year later, he was hurt at work. So when he filed the first petition for bankruptcy, the plan was confirmed within a few months of the filing and the payment plan was established. So each of the creditors was able to look at all of his assets, figure out what he had and what payments that they might be able to get at out of that bankruptcy estate. So payments were established. He was out, I guess, on the record making payments. We get it. So then May 9th he comes in and he has the payment to be reduced because he has a work comp claim. That's correct. Okay. And the payments were reduced. Correct. So he's not paying creditors even less than he was paying the first time. Right. So where is the inconsistency? The problem is, is he has a second workers' comp injury. Remember, the first workers' comp claim, he files a petition with the bankruptcy court and says, I'm not working. I'm only relying on workers' comp benefits. I need my payments reduced. That was May of 09. And that was May of 09. So during this whole time, May of 09, he's paying until the end of his discharge, which is in 2012, he's paying a reduced payment to all of his creditors based on that May 2009 filing, stating, I'm not working. I'm only relying on workers' comp benefits. And that was true at that point, was it not? It was. But then he was injured three months later and never went in. So remember, he's still got another 22 months of time where he can advise the bankruptcy court, by the way, I know I came in in May of 2009 and I told you I wasn't working, but really I was able to find a job. I did return to work. I was earning wages and my wages are higher. So you're saying his failure to disclose is the equivalent of an inconsistent position. It is. It has to be. It is, absolutely. And the fact that he returned to work and didn't, he filed something with the Illinois Congress Commission for workers' comp claims saying, I returned back to work and I was hurt. And that is a direct contradistinction to his earlier filing, I'm not working, I'm only relying on workers' comp benefits. And the problem is that second workers' comp accident was compounded because he was hurt. His employer took him to a clinic. The clinic didn't have the right facilities to treat him, so they said let's get an ambulance and transport him to the hospital. And it was on the way to the hospital that he was injured. On the same day as the second workers' comp claim, he was also hurt in a motor vehicle accident. So he incurred substantial damages as a result of that accident, correct? That's what plaintiff is alleging. He had medical bills that were set out, so those are pretty substantial, aren't they? And it's not part of the record, and I don't want to argue facts that aren't part of the record, but the defendant's position has always been that those substantial bills were related to the second workers' comp injury and not to the motor vehicle accident, which is the state court claim that is here today. But doesn't the law guide the courts that in order to avoid hardships, rulings that deprive litigants of their day in court are really drastic injustices? I mean, really, those are draconian measures that we should not take. Again, a very good point, but we're forgetting another party here, and that is the party of the group of creditors who wanted to be repaid back. You're not here on behalf of the group of creditors. You're here on behalf of the insurance companies here. So aren't they getting a windfall because they're coming in as a man in a white hat saying we're here on behalf of the creditors? They're not here on behalf of the creditors. Who's getting the benefit? And you are absolutely correct that the plaintiffs are getting benefits as well because when you file for bankruptcy, you agree to lay bare your financial corpus and say here's everything that I have. This is all that I have, and you can look at it, and I'm going to file and ask for exemptions of things I don't want you to get at. So the plaintiffs have gotten a windfall. The plaintiffs, not the defendants, the plaintiffs have said, yeah, I didn't have this asset. I don't have a workers' comp injury claim. I don't have a personal injury claim. But I do, I want my payments lowered because I'm not working and I'm only relying on workers' comp benefits. Who's getting the windfall? Not the defendants. It's the plaintiffs if they're allowed to proceed with the personal injury case in this matter. How do you distinguish the Holland case? Holland is interesting. It's got lots of dicta in there. A couple of problems with Holland. In Holland, the plaintiff failed to complete his plan payments. Because he failed to complete them, the case was dismissed. And because the case was dismissed, the court, the Fifth District, said, you know what, he really didn't get a benefit from filing this bankruptcy because it never came to completion. He never got the discharge. There's some language in there that could be used against you, and the following sentence is a sentence that might undercut the plaintiff's argument. Let me read this to you. It says, Holland's claim arose after he had filed his bankruptcy petition and after the bankruptcy court confirmed his Chapter 13 plan. Exactly is what we have here. It goes on to say, however, Holland's failure to schedule his post-petition claim against Schwandt as an asset of the bankruptcy court does not constitute an inconsistent position given under oath, which works against you. But then we have the next sentence. There is nothing in the record to show that Holland filed any documents in the bankruptcy proceeding in which he omitted the existence of the claim after the confirmation. Well, that isn't the case here. You're saying he filed something afterwards in this case. And I don't want to mislead the court. That's not exactly accurate. What he filed was documents after the first worker's cop injury, and that preceded the second worker's cop injury and motor vehicle accident. So his filing, in fairness to the plaintiff, was to the bankruptcy court. After the first injury, he said, I need my payments lowered. I'm not working. But by omission, he never supplemented that or revised that disclosure to tell the court, hey, I've gone back to work. But he also never filed anything after the first return to court, correct? We do have a record, and we've put it forth in the briefs that he did some filings. It looks like there were some address changes. But it was administrated. It wasn't anything to do with assets or schedules, was it? It also looked like there was a hearing that was brought by the trustee because the plaintiff failed to file some tax forms that were required. And I can tell you what date that is. It's in there. But did it have anything to do with assets or claims? I don't know that it said anything to do about assets or claims as far as a sworn statement. Okay. Any other questions? No. Okay.  Okay, thank you, Your Honor. The defendants respectfully request that this court affirm the decision of the trial court. The circuit court of the 17th Judicial Circuit did not abuse its discretion in this matter when it found that judicial estoppel applied because the record before the court justified a finding that all five elements of judicial estoppel had been met and that the affidavits which were presented by the plaintiffs failed to take into account the requirement of complete and ongoing disclosure of any and all assets, including those acquired after a bankruptcy is filed. The trial court was therefore correct in granting summary judgment against the plaintiffs and in favor of all defendants. And I know that I have a few minutes of time. If the court would allow me, or didn't I be allowed? No, I think the time is up. Oh, it is up? I didn't hear it. Thank you. Thank you. All right, Mr. Cacciatore. Yes, Justice Hudson. What Holland does help us, and that is a case that's similar to this case that you asked me about a moment ago that I couldn't recall, but at any rate, it does. The point is here. I just, I'm sorry. This man was done what he was told to do. He did not have any bad motives or ill intents. There's no evidence of that, I think, whatsoever. He and his wife did what they were supposed to do. They paid it. And, yes, this is a windfall. This case is, and I've been involved in practice a long time, easily over $1 million in damages. And these, this decision and the dismissal of this case would be very injurious to the plaintiff. I can tell you that and his family. And I don't think that there's enough evidence under judicial estoppel to support the dismissal of this case. And I'm asking this court, based upon the fact that it's a lot like Holland, but he did nothing wrong. Mr. Armpatch Attorney, let me ask you in response to what your opponent just brought up. He came in and he asked, I think it was in May of 2009. He said, I have an injury at work. Can you reduce my payments because I'm not making as much money. I'm now on work time. He never came back in and said, oh, I have a job, until he, until they later find out that he was injured at work with a job. So isn't it inconsistent the fact that he didn't go back in to bankruptcy court, ask again to adjust his payment to increase as a result of his job. If I may just respectfully submit to you, your honor, that it was approximately seven days from the end of the first job to the beginning of the second job. And so that was. I'm sorry, say that again. It was only seven days before the end of the first job that he had had till he started his second job. And that's why he didn't go back in. But he went in and they reduced the payment at the end of his first job. That's right, because he made less money in the second job. After he got that second job. Right. So he couldn't. Oh, so he had less money because he was on workman's comp, isn't that right? He was collecting workman's comp. It is, but that represents two thirds of your average weekly wage. And I think that the second job he had was less money. So he didn't have to make as much money and get as much money in temporary total disability as he did in the first job. All right. Thank you, counsel. At this time, the court will take the matter under advisement and render a decision in due court. We stand in brief recess until the next case. Thank you.